# Louis Garafano v. Neshobe Beach Club, Inc., Rutland Chamber of Commerce, Inc., and Joseph Tailby

[ 238 A.2d 70 ]

October Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 5, 1967

Reargument Denied January 25, 1968

*Abatiell & Abatiell* for the plaintiff.

*Alfred A. Guarino* for defendant, Neshobe Beach Club, Inc.

*Black & Plante* for defendant Tailby with *Harry A. Black* on the brief.

*Ryan, Smith & Carbine* for defendant, Rutland Chamber of Commerce.

**Keyser, J.** This is an action to recover for personal injuries sustained by plaintiff. At the close of plaintiff's case the court directed a verdict for each defendant. The plaintiff claims this was error and appealed. The question presented is whether the plaintiff had made out a *prima facie* case against one or more of the defendants.

The evidence taken in the light most favorable to the plaintiff tends to show the following facts. In early 1963 defendant Rutland Chamber of Commerce, Inc. (Chamber) promoted its annual membership drive. The plaintiff, although not a member, participated in it at the request of his employer. He enrolled the most members and turned in the most money and was on the winning team. The Chamber, as it had done in previous years, provided a reward for the winners. This was a free steak roast and was held June 19, 1963 on the east shore of Lake Bomoseen at the cottage of one of its members, defendant Tailby. The function was held at that location by invitation of defendant Tailby to the Chamber. He furnished the facilities and Chamber had charge of the party.

The plaintiff received a written invitation from the Chamber which gave the details of the party "rules of the steak roast." These recited that softball, horseshoes and badminton would be played and said "If you have any ball gloves, please bring them." The plaintiff complied and brought his ball glove.

The recreation area was in two parts, one being an area of land located westerly of eleven cottages built in a semicircle, the other being land beyond the semicircle, or westerly of it, and running to the shore of the lake. The land within the semicircle was owned by the cottage owners within the semicircle, $1/10$th interest in each owner excepting defendant Tailby and another owner, their interest being $1/20$th each. A marble marker set in the ground identifies the dividing line of the land owned by the eleven cottage owners and the land westerly of it to the lake. Each cottage owner took care of a pie-shaped piece of the land within the semicircle running from his cottage to the marble marker.

All of the land from the marble marker to the lake is owned by defendant Neshobe Beach Club, Inc. (Neshobe) and is used as a recreational area. This area owned by Neshobe is shown on a map, Plaintiff's Exhibit No. 1, as "A Beach." This places the marker at one-half the distance from each end of the half-circle with a broken line extending from one point of the half-circle to the other and intersecting the center of the marker. Only the cottage owners in that particular area can become members of Neshobe. As such members they have access to and the use of Neshobe's land. In addition they also have the right for their guests to use the entire recreational area. Neshobe has charge of and the responsibility of caring for this area and hires a man to take care of it and keep up the grounds.

As indicated by the invitation, a softball game was organized, bases were set out and sides chosen. The plaintiff was asked to play as roving center fielder on one of the teams. A short time after the game got under way a fly ball was hit out in his direction. Before this plaintiff had moved over into the left field area because the member playing there had gone after a ball hit towards the lake. In his attempt to catch the ball, plaintiff stepped into a hole, which he later thought might be a woodchuck hole, and seriously injured his left leg. As a consequence he brought suit charging each defendant with negligence for failure to maintain the premises in a safe and reasonable condition and state of repair so as to avoid injury to the plaintiff and for failure to warn plaintiff of all dangers concealed on said premises.

■ Two of the defendants are corporations and as such they are liable for their negligent torts, and for negligence of their officers and servants acting in the course of their official duty or employment, in the same manner and to the same extent that individuals are liable under the same circumstances. *Selinas* v. *State Agricultural Society,* 60 Vt. 249, 254, 15 A. 117.

Each defendant contends that plaintiff was a gratuitous licensee, or social guest, and cite *Lomberg* v. *Renner,* 121 Vt. 311, 315, 157 A.2d 222 as authority supporting their contention. However, the facts in that case are dissimilar to those in the present case. Here the plaintiff was on the premises in question by an express invitation and known to be present whereas in the *Lomberg* case the owner had no knowledge of the plaintiff's presence in her home. In that situation this court there said that the only duty imposed on the owner is not to do any wilful or wanton act to injure the guest.

They also cite *Wool* v. *Larner*, 112 Vt. 431, 26 A.2d 89, 93 in which the question arose of whether plaintiff was a business visitor or a gratuitous licensee of a tenant of the defendants.

In the *Wool* case the plaintiff and a Mrs. Allen were invited to come to the apartment of a friend in a building owned by the defendants to wait for Mrs. Allen's husband to call for them after work and drive them home. This was late in the evening. As the plaintiff and Mrs. Allen were walking along the dark driveway to reach their friend's apartment the plaintiff fell into a coal hole near the building. The court said the question whether plaintiff "was one (a business visitor) or the other (a gratuitous licensee) is not material here. No question is made that she was passing along the driveway for the purpose of entering the McNalley apartment in response to Mrs. McNally's invitation at the time she fell into the coal hole. She was, therefore, rightfully and lawfully in the driveway using it for a purpose for which it was maintained by the defendants, and for which they must be taken to have expected it would be used."

In *Coburn* v. *Village of Swanton*, 94 Vt. 168, 109 A. 854, an employee of the defendant hired the plaintiff, a twelve-year-old boy, to carry food to him and deliver it to him within defendant's power house. While leaving, the boy was injured and brought suit for negligence. At p. 171 of 94 Vt., at p. 856 of 109 A. the opinion reads: "The main question is whether it appears from the declaration that the plaintiff was, at the time of the injury, at the place where the accident occurred by the invitation of the defendant, express or implied—whether he was there as an invitee, or merely as a licensee. If the allegations show that he stood in the position of the former, the declaration is sufficient, otherwise it is not."

■■ If the owner or occupier of land "directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use." *Hobbs* v. *George W. Blanchard & Sons Company*, 75 N.H. 73, 70 A. 1082; Cf. *Selinas* v. *State Agricultural Society, supra*. In the *Hobbs* case the court further held that "if there be evidence tending to show inducement or invitation (to enter the premises), it becomes a question of fact for the jury" to determine whether plaintiff is an invitee.

There is no dispute but that Neshobe owns the land which appears on Plaintiff's Exhibit No. 1 as "A Beach." Only cottage owners in

the semicircle area are eligible to become members of Neshobe corporation. Each member pays a yearly assessment. Neshobe hires a man to take care of the beach area, mow the grass and keep up the grounds. All members have access to and the use of the "A Beach" area. Each one has the further right to have his guests also use the area. Neshobe's land is apparently owned only for recreational purposes for the use and benefit of the foregoing persons and are maintained solely for this reason.

The Chamber had offered plaintiff and others a prize as an inducement to gain members. It was fulfilling its promise by holding the steak roast at the place in question by the invitation of its member and Neshobe's member, defendant Tailby. This was the only reason for plaintiff's presence there. No question is raised but that the area for the sports was rightfully being used by the members of Chamber—a purpose for which it was maintained.

It was only by reason of Tailby's rights as a member of Neshobe and as a cottage owner that the entire recreational area became available to use for the sporting events, particularly the softball game. Except for Tailby the party could not have taken place and the persons invited by Chamber would have had no right to be there. Arrangements for the party were made by Tailby with the managing director of Chamber. The whole area became available for the party only by Tailby's action and invitation. Tailby knew the grounds were to be, and were being, used for this purpose. Softball was one of the planned activities for the occasion as it had been in previous years. Under these circumstances there was at least an implied invitation by Neshobe extended to those members of Chamber who were entitled to come to the steak roast as his guests. This is not a case of Tailby's knowledge being imputed to the Neshobe corporation.

■ Moreover, there is evidence from which the jury could have found that the relationship between Neshobe and Tailby, as well as all other members, was analogous to that of landlord and tenant. In *Wood* v. *Larner, supra,* we said at page 435, 26 A.2d at page 92:

"It is well settled that if a landlord while renting premises retains portions thereof under his control, as was done in the case at bar, the responsibility for injuries to persons rightfully there is his and not the tenant's. He is liable not in his character as lessor but as owner and occupant. He owes a duty to his tenants and those on

the premises at their invitation for any lawful purpose to keep such undemised parts reasonably safe."

■ Did Neshobe, the owner, reserve the management, control and upkeep of the premises? The evidence in the case required this question of fact to be submitted to the jury. If the jury answered it in the affirmative, the plaintiff had satisfied the burden of proof cast upon him on this issue. *Cobb* v. *Rutland Savings Bank,* 113 Vt. 117, 120, 29 A.2d 705.

■ The use of Neshobe's recreational area by Tailby and his guests was to its interest and advantage and was in furtherance of its purposes and functions. The status of such persons is that of a business visitor. *Robillard* v. *Tillotson,* 118 Vt. 294, 298, 108 A.2d 524.

Under the facts shown by the evidence Neshobe owed the plaintiff the same duty respecting the condition of its premises that it owed to its members individually. In the discharge of its duty, Neshobe was bound to use reasonable care to keep its premises in a safe and suitable condition so that plaintiff would not be unnecessarily or unreasonably exposed to danger. If a hidden danger existed, known to the defendant, but unknown and not reasonably apparent to the plaintiff, it was Neshobe's duty to give warning of it to the latter. In those circumstances he had a right to assume that the premises, aside from obvious dangers, were reasonably safe for the purpose for which he was upon them, and that proper precaution had been taken to make them so. *Johnstone* v. *Bushnell,* 118 Vt. 162, 165, 102 A.2d 334; *Wool* v. *Larner, supra; Cole* v. *North Danville Coop. Creamery Assoc.,* 103 Vt. 32, 39, 40, 151 A. 568. See also *Hutchins* v. *Penobscott Bay & River Steamboat Co.,* 110 Me. 369, 86 A. 250; 38 Am.Jur., Negligence §96.

■ There is an implied representation made to the individual members and their guests, by holding the land open to them, that it is in a reasonably safe condition for the use to be made of it. Whether Neshobe neglected to perform its duty to use the requisite degree of care and whether it knew, or should have known, through its officers or servants of the existence of a dangerous and defective condition were jury questions.

■ Neshobe urged as further grounds of its motion for a directed verdict that the plaintiff was guilty of contributory negligence and

that he assumed the risk. Being affirmative defenses, the burden of proof was on the defendant. 12 V.S.A. §1024.

In granting the motion of defendants Neshobe and Tailby the court ruled that plaintiff was guilty of contributory negligence. As the evidence then stood there was a jury question on this issue and this ruling was error. Where the evidence affords room for opposing inferences on the part of reasonable persons it is error to direct a verdict. *Johnstone* v. *Bushnell, supra.*

The true test of negligence is what would a careful and prudent person have done under like circumstances, acting on his judgment then, and not on a judgment based on subsequent reflection. *Lewis* v. *Vermont Gas Corp.,* 121 Vt. 168, 183, 151 A.2d 297.

Defendant Neshobe contends the plaintiff's negligence was his failure to examine the premises and that by the use of care on his part he would have discovered the hole.

The plaintiff testified he didn't look for or notice any holes before the accident; that the hole couldn't be seen from any distance from it; that grass was all around the hole; that he did observe the lay of the terrain to see what the area was like around where he was playing; that for a vacation cottage area, it "was a pretty decent lawn"; and that he accepted the field "as a playing area."

The invitation extended to plaintiff indicated games would be played and "everyone attending must have a good time." The area where the softball game was being played was held out to be the recreational area for the sports and the plaintiff accepted it as such. Considering the contents of the invitation, and the area, as it appeared to him, on which the game was to be played, the plaintiff could well have considered this to be a representation that the grounds were safe for a ball game. From his observation he saw nothing which indicated the existence of danger from hidden holes. He thought that everything was all right and went out and played.

Negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent person. *Johnstone* v. *Bushnell, supra.* Was the plaintiff deceived by the circumstances shown to exist here or did he fail to use due care for his own safety? Does the evidence show that the plaintiff should have given the ground a more thorough and careful examination to discover any holes or hidden dangers or that he reasonably should have known of the exist-

574

ence of the hole? Was he acting as a careful and prudent person under the circumstances? These questions of fact were clearly for resolution by the jury. 38 Am.Jur., Negligence §348; 65 C.J.S., Negligence §15.

This defendant argues that since the plaintiff did not look for holes in the playing area and was participating in a sport, he assumed the risk as a matter of law.

■ If the doctrine is to apply there must be knowledge of the existence of the risk, together with an appreciation of the extent of the danger. "One cannot assume a risk unless one knows about it, appreciates it, and consents to assume it. It is only when one, knowing and comprehending the danger, voluntarily exposes himself to it, even though not negligent in so doing, is he deemed to have assumed the risk from an injury resulting therefrom." *Killary* v. *Chamber of Commerce,* 123 Vt. 256, 262, 186 A.2d 170, 174; *Berry* v. *Whitney and Whitney,* 125 Vt. 383, 387, 217 A.2d 41.

It appears that the plaintiff was not aware of the hole in the field and had no knowledge of the nature and extent of the risk he was to encounter in running on the field. To hold he assumed the risk it was necessary for him to have been fully aware of these circumstances. By also urging that the plaintiff assumed the risks inherent with the sport, the defendant has mistakenly associated the injury with the playing of the sport itself whereas it is not. Rather, it is the condition of the recreation field provided for the game that was the cause of the injury.

■ Under the circumstances shown, it cannot be held as a matter of law that the case is within the application of the doctrine of the assumption of risk. Neshobe failed to sustain the burden of proof on this issue. The ruling of the court was silent as to this ground of the motion. We have considered it since the point was urged below and all of the defendants have briefed it.

The state of the evidence at the time Neshobe made its motion for a directed verdict did not warrant a ruling by the court in its favor on any of the grounds stated and it was error for the court to have so ruled.

The relationship of defendants Chamber and Tailby to the plaintiff was not like that of Neshobe.

■ The liability of an owner or occupant of real estate in reference to injuries caused by a dangerous or defective condition of

the premises depends in general upon his having control of the property. In fact, such liability depends upon control, rather than ownership, of the premises. 38 Am.Jur., Negligence §94, p. 753.

Ordinarily a person who is not the owner and is not in control of property is not liable for negligence with respect to such property. *Soulia* v. *Noyes,* 111 Vt. 323, 327, 16 A.2d 173; 65A C.J.S., Negligence §184, p. 327.

■ The burden of proving that Chamber and Tailby had control of the premises was upon the plaintiff. *Cobb* v. *Rutland Savings Bank, supra; Soulia* v. *Noyes, supra.*

■ As we have said, *supra,* the premises where the accident occurred were owned by and under the control of defendant Neshobe. Neither Chamber nor Tailby had any notice or knowledge of hidden dangers on the premises. There is no evidence that plaintiff's injury arose from any negligent acts or failure to act either by Chamber or Tailby which rendered the premises unsafe and dangerous for the use then being made of them. The status of Chamber and Tailby coupled with the lack of notice or knowledge of any hidden dangers negatives a holding of liability as to each of these defendants. The court properly granted their motions for a directed verdict.

*Judgment for defendant Rutland Chamber of Commerce, Inc. and Joseph Tailby is affirmed; judgment for defendant Neshobe Beach Club, Inc., is reversed and remanded.*

**Holden, C.J.** (concurring in part).

I concur with the majority that the trial court correctly granted the defendant Tailby's motion for a directed verdict. I agree too that it was error to withhold from the jury the question of Neshobe's liability, as the owner of the land where the injury occurred. But as I view the record, there was also a question for the jury on the issue of negligence on the part of the defendant Rutland Chamber of Commerce.

This defendant, though neither landowner nor tenant, was present on the land, acting with the possessor's consent and authority. See Restatement, Torts 2d §383a. It did so at its own instigation.

The fact that the plaintiff and this defendant were both invitees of the landowner does not absolve the Chamber for liability. A licensee may be charged with a duty to other persons on the land, although the licensor is not. *Humphrey* v. *Twin State Gas & Electric Co.,* 100 Vt. 414, 417, 139 A. 440, 56 A.L.R. 1011.

The evidence establishes that the Chamber of Commerce was the sponsor of the project to advance its own objectives. It issued the invitation to the plaintiff, gave the details of the program and established "the rules of the steak roast." All this was done under the supervision of its managing director. And its members organized the ball game.

In undertaking to sponsor an athletic event, the Chamber of Commerce was called upon to use reasonable care in all matters connected with the enterprise for the reasonable protection of its invitees, whether spectators or participants. *Dusckiewicz* v. *Carter,* 115 Vt. 122, 126, 52 A.2d 788; *Killary* v. *Burlington-Lake Champlain Chamber of Commerce, Inc.,* 123 Vt. 256, 265, 186 A.2d 170.

The sponsor's status, as a licensee, will not excuse it from this requirement in an action by an injured invitee. *Rouillard* v. *Canadian Klondike Club, Inc.,* 316 Mass. 11, 54 N.E.2d 680, 681. Neither will the fact that the landowner had an equivalent duty in this regard necessarily relieve his licensee. Either one, or both may be legally responsible, according to the nature of their control. *Klinsky* v. *Hanson Van Winkle Munning Co.,* 38 N.J.Super. 439, 119 A.2d 166, 171.

The record before us permits the inference that the Chamber of Commerce not only issued the invitation, but assumed some degree of control of the place and events to which the plaintiff was invited. To my mind, this is sufficient to charge the defendant with recognition that harm would come to the plaintiff, if the area where the competition was to take place should be unsafe. And if its representatives knew, or should have known, by reasonable vigilance, that the playing field contained areas of danger, the Chamber of Commerce was called upon to correct or warn, according to its authority in the premises. For these reasons, I think it was for the jury to determine whether this defendant had control of the situation to such a degree that it could have averted the danger by the exercise of reasonable precaution.

I am authorized to say **Shangraw, J.,** joins me in this opinion.