Vermont Superior Court
Filed 02/13/25

| SUPERIOR COURT |  | CIVIL DIVISION |
|---|---|---|
| Washington Unit | | Case No. 24-CV-00602 |
| 65 State Street | | |
| Montpelier VT  05602 | | |
| 802-828-2091 | | |
| www.vermontjudiciary.org | | |

---

Robert Dutil v. 1401 Marshfield LLC

---

Opinion and Order on Marshfield's Motion for Summary Judgment

Plaintiff Robert Dutil claims that while on commercial property owned by Defendant 1401 Marshfield LLC ("Marshfield"), he slipped on ice in the parking lot and sustained injuries.  He seeks compensatory damages from Marshfield, asserting that it negligently failed to keep that area of the parking lot in a safe condition.  Marshfield has filed a motion for summary judgment arguing that its tenant, the United States Postal Service ("USPS"), had control over the location where Mr. Dutil fell such that liability cannot properly be attributed to Marshfield.

I.      Procedural Standard

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).  Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial).  The Court derives the undisputed facts from the parties' statements of fact and the supporting documents.  *Boulton v. CLD*

*Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427.

A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380.

II.    Analysis

There is no properly lodged dispute of material fact in this case. Mr. Dutil expressly says so, and he has not attempted to dispute any facts in Marshfield's statement of material facts. Nor has he attempted to present any evidence in support of a narrative that differs in any way from the statement of undisputed facts submitted by Marshfield. It is clear that Mr. Dutil went into the post office on Marshfield's property and, when he came out, he allegedly slipped and fell in a parking lot space immediately in front of the post office.

The parties also agree that the determinative legal principle is this: "The liability of an owner or occupant of real estate in reference to injuries caused by a dangerous or defective condition of the premises depends in general upon his having control of the property. In fact, such liability depends upon control, rather than ownership, of the premises." *Garafano v. Neshobe Beach Club, Inc.*, 126 Vt. 566, 574–75 (1967). The burden of proving who had control is on the plaintiff. *Id*. at 575.

According to Marshfield, the lease with the USPS, including the Utilities and Services Rider, establishes that the USPS had control over care of the parking spaces in front its facility. It argues that, if there is any ambiguity as to that matter, then it

should be resolved in its favor based on the unchallenged testimony of its principal, Mr. Lucky Boardman. In opposition, Mr. Dutil appears to argue that the lease does not designate *exclusive* control over the disputed parking area to the USPS and makes clear that the parking lot is a common area.[1]

Paragraph 1 of the Lease describes the leased premises, in part, as follows: "The Premises consists of approximately 1,077 square feet of net interior space and 180 square feet of exterior space consisting of platform, ramp, reserved parking and maneuvering, access areas, driveways and drive aisles and sidewalks. The reserved parking area, if any, is shown on Exhibit B attached hereto and incorporated herein." Separately, ¶ 1 also states that the UPSP has access to all non-exclusive common areas, which includes, in part, the common parking area. Exhibit B is a photograph of a building, presumably the leased USPS premises, and the parking lot area immediately in front of it. The whole point of Exhibit B, as described in the Lease, is to document where the reserved parking area is. There can be no doubt that the Lease contemplates a reserved parking area.

The Utilities and Services Rider further states as follows:

> Landlord is responsible for the timely (but in no event later than as required for owners of property in the local Jurisdiction under local law) removal of snow and ice from the roof and the common area sidewalks, driveway, drive aisles, entrances, exits, parking and maneuvering areas, (including, but not limited to, stairs, handicap access ramps, etc. in the common areas) at Landlord's cost. The Postal Service is responsible to remove snow

---

[1] To the extent that Mr. Dutil contends that, regardless of the lease, there was an established "practice" of Marshfield of performing snow/ice removal services in the disputed area, which in theory might show that the area was not exclusively maintained by the USPS, the Court disregards that argument. Mr. Dutil has failed to present any evidence or to dispute otherwise allegedly undisputed facts as Rule 56 contemplates. He has effectively waived any arguments that depend on any facts not properly presented. *See* Vt. R. Civ. P. 56(c)(2), (c)(5), (e)(3).

and ice from its exclusive use portions of the sidewalks, driveways, drive aisles, entrances, exits, parking and maneuvering areas, including those sidewalks immediately in front of the Premises used exclusively by the Postal Service's employees, contractors, or customers (including, but not limited to, stairs, handicap access ramps, carrier ramps, etc.). Landlord is responsible for, and will pay the costs of, the removal of snow and ice from the roof or any areas not exclusively used by the Postal Service.

Additionally, in his deposition (pages 12–13), Mr. Boardman testified as follows:

Q.     Okay. And you've owned the property now and for a couple years. Help me describe what their leased area is according to the lease as you understand it.

A.     It's the storefront width of their area, so they have four parking spots or so, with the handicap in front, and I believe it goes out like eight feet or so from there, so that's the area that they typically maintain.

Q.     Okay. The area that they typically maintain, is that different from what you understand is in the lease?

A.     No, I just don't know the exact layout, so—

Q.     So, to your understanding, there's— the lease with the post office includes designated parking spots,—

A.     Yes.

Q.     —right? And do you know whether there's some sketch or delineation within the lease about the designated area that you're referring to?

A.     There is.

The Lease ¶ 1 clearly reserves certain parking spaces to the USPS's use. It would make no sense to reserve certain spots for the USPS's use if they, nevertheless, were considered to be common spots available to all tenants. By reserving those spots, the Lease reflects the intent that these spots are for the USPS's exclusive use. The photograph at Exhibit B documents where those spaces are: immediately in front of the post office. The Rider unambiguously allocates responsibility regarding snow and ice removal in exclusive use areas, including "parking and maneuvering areas," to the USPS.

The Court sees no ambiguity in the contract language. And, even if there were, the only material evidence submitted, Mr. Boardman's testimony, supports Marshfield's position on the motion.

The summary judgment record shows that the location of the fall was in an area of the parking lot dedicated for the USPS's exclusive use and for which it—not Marshfield—had the responsibility to remove snow and ice. Mr. Dutil has come forward with no evidence the contrary. As between Marshfield and the USPS, if either might have liability for Mr. Dutil's injuries, the potentially responsible party is not Marshfield.

<u>Conclusion</u>

For the foregoing reasons, Marshfield's motion for summary judgment is granted.

Electronically signed on Tuesday, February 11, 2025, per V.R.E.F. 9(d).


Timothy B. Tomasi
Superior Court Judge